United States v. Dan Carlos Marchena-Silvestre Mrs. Thompson?  Good morning, panel. My name is Linda Thompson, and I represent the appellant, Mr. Marcino Silvestri, in this case. This is a sentencing appeal from a sentence that was imposed by Judge Fusti in Puerto Rico. The sentence imposed was 72 months for a person who had a criminal history Category 1 and a total offense level of 19. The claims that we make in this case are that there were procedural errors and that the resulting sentence was substantively unreasonable and that in addition to that, there was a breach of the plea agreement in this case. Are you proceeding under plain error review on all of these arguments? Well, we did file a 28-J letter with regard to the substantive unreasonableness of the sentence based on this court's recent ruling in the Ruiz-Huertas case. And that was decided after the briefs had been filed. And I note that the government has opposed our saying we claimed plain error review throughout our brief, but in light of the statements made by this court in Ruiz-Huertas, we believe that it would be appropriate for this court to look at the substantively unreasonable portion on an abuse of discretion. But everything else is plain error? Everything. There were no objections, Judge Selye. None. So this case started, I believe the problems with this case actually started at the plea. The plea agreement called for a recommendation from the government and also limited the recommendation from the defense. The plea agreement itself set out a grid of potential pleas, of potential sentencing guidelines that ranged from 24 to 63 months. You'll see the grid in our appendix of the joint appendix, page 13. The only thing that was not decided or not considered by the defendant and the government was the criminal history category of Mr. Marcino Silvestri. So the grid, the one that the judge also recited to the defendant at the plea was that he faced imprisonment between 24 and 63 months, depending on the criminal history category, which had not been decided yet. The government took the position that that grid was determined by their consideration of 3553A factors. And based on that consideration, they came up with this grid. The government took the position that they would ask for the top of that grid's guideline range. And that the defendant could ask for the bottom, but nobody would be asking for variance. But the plea agreement doesn't say at the top of that grid guideline range. The plea agreement uses a particular term. It says at the top of the applicable guideline range. And it's hard for me to believe that the term applicable means anything other than the guideline range that the court determines applies. I mean, that's the logical meaning. And there was no objection when the court gave it that meaning. So how on earth on plain error review can we give it some other meaning? Well, I think that this was the bargain for recommendation. And the judge specifically said that what the defendant was bargaining for was a sentence between 23 and 64 months. That refers specifically to the grid and not to some other applicable guideline range. But what you've said is that the government breached the plea agreement where its only obligation was not to recommend the sentence that went above the applicable guideline range. Applicable. And you read the word applicable completely out of that obligation. No, I do not. I read the applicable guideline range to mean the guideline range that is determined under this grid once the criminal history category is decided. I tend to read the agreement the way you did, counsel. And yet I'm then brought up against the fact that defense counsel standing there who negotiated the agreement didn't seem to have any problem with the way the government was interpreting it. And on the one hand, we could just say that triggers plain error review. But on the other, one could cite that as evidence that if there is any ambiguity in the agreement, we've got both parties who negotiated it standing there and apparently viewing it the same way. Well, if there is ambiguity in the agreement, my understanding is that that is charged to the government, the ambiguity in the agreement. But what I would say about defense counsel in this is I would say defense counsel was completely cowed by Judge Fusti's approach at the sentencing. And that every time the defense counsel opened his mouth to say anything, he was cut off by Judge Fusti. Judge Fusti never did, in fact, calculate an applicable guideline range. In fact, Judge Fusti was totally indifferent as far as the transcript shows to what the applicable guideline range might be. And when at the very end of the sentencing he stated a guideline range, it was incorrect. It wasn't the applicable. But in the order that he entered justifying the departure, he states the range correctly. I don't think he did. I don't think he ever stated the range correctly. I thought at one point in his sentencing pronouncements he adopted the range recommended by the probation department. He then incorrectly stated it. After sentencing. I think that was done after sentencing. In the written findings? The way I see the guideline range in the sealed supplemental appendix by the United States is 33 to 41. That also is not the applicable guideline range. He got it wrong both times in different ways. Every time it was wrong. First he said 31 to 41 orally. And then when he wrote it down he said 33 to 41. And in both instances he was wrong on the 41. It was 37. That's correct. And so what that indicates to me really is just to the defendant is just that Judge Fuske wasn't interested in the guideline range. And I think that becomes exceedingly clear when he begins to talk about when he does the sentencing and he does it basically puts the end of everything first. He never talks, he never asks counsel about the guideline range that they're talking about. He never consults probation about the guideline range that they're talking about. From the very beginning of the taking the plea of Mr. Martina Silvestri, the court refers to the offense which is a firearms offense, a possession offense, possession of a machine gun. And actually it was two firearms. Possession of a firearm. He asks the defendant if he has any convictions during the plea colloquy. And the defendant says he does. And of course Judge Fuske gets very upset about the fact that a firearm offense has been reduced from a felony to a misdemeanor and turned into a fine. There's also an aggravated encroachment offense which doesn't account for any, it's basically a trespass. It doesn't account for anything under the criminal history points. And then there was an arrest for which no probable cause was found. That, after the two fined offenses are discussed, the judge says to the defendant and defense counsel at the joint appendix number 33, any other crime of violence without consequence. Well, none of the crimes that were discussed were crimes of violence, including the one to which the defendant pled. Not a crime of violence. So from the very beginning, Judge Fuske had made up his mind that this was a crime of violence. He paid no attention to the calculation of the guidelines. But he determined that this was not a case within the heartland. Even though at the plea, he said the following, which I consider to be, put this particular offense in the run-of-the-mind category. This issue of automatic firearms is our daily bread in this court. So it seems to me that this is the usual kind of offense with automatic weapons. This issue of automatic firearms is our daily bread in this court. So that seems to put that directly in the heartland of what was considered when the guidelines were being established. Then at sentencing, and one of the things that it's difficult for me to tell in the sentencing, is whether when Judge Fuske talks about the fact that the, this is nothing extraordinary. This is page 50 of the joint appendix. The pattern that we see day after day, automatic guns and the lenient state court treatment, which I understand is an issue in Puerto Rico. So throughout these discussions with defense counsel and the government, this really is referred to as a heartland case. It's what we see every day. It's our daily bread. And then suddenly the court says to the parties, I'm not interested in the guidelines. I want to talk about the facts. This is not a guidelines case. And even if this court were to take the opinion that basically the plea agreement did not promise anything to Mr. Marchena Silvestri, which I think would be an unfortunate way to give up your constitutional rights, but the situation is that he actually bargained for a guideline sentence. That's what he was bargaining for, a guideline sentence. And that's really what the government was promising. We are going to recommend a guideline sentence. So even if this court were to say, well, nobody objected to 30 to 37 months, and therefore, you know, that was the appropriate, nobody was, the government was not advocating for what it promised was a guideline sentence. It just said we recommend 37 months, given what you've said, Judge Fusti. So what we have here is a sentence of 72 months. The sentence of 72 months is not justified by, and I will tell you that we had a very difficult time coming up with the actual reasons that Judge Fusti gave, because they don't appear clearly in the sentencing transcript. We got the statement of reasons after we had been on this case for a considerable amount of time, because they were impounded by the Puerto Rico court. What Judge Fusti said was his reasons for giving this extraordinary sentence, which was more than double the top of what was contemplated at the time the plea was entered, was that, well, he checked four boxes, and then the explanation was, the defendant has reported a history of marijuana, basically drug use. That's pretty unusual, I think, for criminal defendants. He has a prior conviction for violation of a gun law in Puerto Rico that he got a fine for. He was also fined for the trespassing offense, and he has been arrested for another violation that resulted in a finding of no probable cause. Now, that seems to hardly justify a situation where the court refuses to calculate the sentencing guidelines, which is the launch point for any variation of a sentence, and then saying this is outside of the heartland and coming up with 72 months where that sentence came from, we have no idea. It does not seem to be justified, and if this court is to apply, as suggested in the Ruiz Huertas case, even if it applies to plain error, because this is outside of the guideline range, and the guideline range were not calculated. This is an inadequate explanation for this extraordinary departure from the guidelines, and we would ask that this case be remanded for resentencing in front of a different judge. Thank you. Thank you, Your Honors. Juan Ruiz on behalf of the United States. Your Honors, I'd like to begin by addressing briefly the standard of review in this case. Defense counsel just conceded that it's a plain error throughout, except for the substantive reasonableness. We submit, based on this court's case law that we cited in our 28-J letter, that the standard of review also for substantive unreasonableness claims should be under plain error. I think we understand, counsel, what that problem or potential problem is. Yes, Your Honor. But what I'd like you to start is where the district court, had it followed usual practice, would have started, not as with the guideline sentencing range. What do we make of the fact that Judge Fuste at no time apparently ever properly calculated the guideline sentencing range? Well, Your Honor, it is correct. It is true that the court misstated. It adopted. It's curious that the court adopted the pre-sentence reports calculations and accurately calculated the offense level at 19, accurately calculated, at least under the guidelines, the criminal history category at 1, but it did misstate at the sentencing hearing. Instead of saying 30, that arrived at a 30 to 37 range, it did say 31 to 41. And then in its written sentencing findings, it made a different miscalculation. Yes. So that suggests that the court did misstate the ultimate guideline sentence. Doesn't it suggest that the court was confused about what the guidelines range was? And are, well... I mean, that's a pretty simple question. Doesn't it suggest that the court was confused about what the actual guidelines range was? Yes, Your Honor, but on plain... Isn't that material? On plain error review, in this case... Wait, wait. Take it a step at a time. Here's a district court that does an upward variance, all right? How do you calculate an upward variance? That starts with the top of the guideline range and then deciding how much above it you think you have to go in order to appropriately punish a particular defendant for a particular offense. So if that starting point, if the court's confused about that, if the court should have started at 37 but instead started at 41 or 43 or some erroneously higher figure, isn't that a pretty good indication that the sentence wound up higher than even the court intended it to be? Not on these facts, Your Honor. Not with the discussion and the explanation that the district court gave. There is case law from this circuit that the roadmap, which Your Honor mentions, is only advisory. It's not obligatory. No, no, but that applies to when the court is supposed to calculate the guideline range. Yes. We don't have any prior case law that validates the district court's persistent misstatement of the guideline range. Your Honor, based on... I would disagree in terms of the lack of that case law. There is case law from this circuit that even where the district court calculates and determines a guideline range that is erroneous, that is not a per se basis for a reversal. I'm not suggesting it's per se. I'm suggesting that an upward variance based on a miscalculated or misapprehended guideline range is very suspect. The misapprehension in this case was minor, only four months on the top end, one month on the low end, and the district court did state, this is an experienced judge who did state specifically for the record, the reasons that drove that variance. So you would mind if we just lopped off the four months now? I'm sorry? The four months you say is minor time to spend in prison. Does that mean we can just lop it off? No, because the district court made clear that he did not anchor the sentence on the guidelines. Well, suppose he had just said, suppose the judge had just said, I don't care what the guideline sentences are, I'm not going to calculate them, here are your 72 months, and here's why. Wouldn't we reverse that? That's not the facts of this case. Well, isn't it even worse that instead of not caring about them, he concluded they were higher than they actually are and then went on to his calculation? We disagree to the conclusion that the court did not care for them. The court did consider them, and that is what the case law requires, to consider, but the district court has discretion to disagree with the guidelines. And I think that there's something that your Honor should pay attention to, have into consideration, and this should not be lost in this appeal. At the sentencing hearing, although defense counsel tried to persuade the court that a guideline sentence should be imposed, defense counsel nonetheless expressly agreed at the sentencing hearing that it was reasonable for the district court to conclude that this case was well outside the hard land of cases to which the guidelines apply. Now you're getting on to a different issue. We're on the procedural issue. This whole thing is supposed to start with the judge locating himself or herself on a scale and then go from there. And we know he located himself at the wrong place at 41 months. In fact, wasn't that obvious to the prosecutor who was standing right there? Well, your Honor, it is a misstatement. It is an error. But it was an obvious error, was it not? It is an obvious error. And to have misstated the guideline, but that is not the end of the analysis on plain error review. It is an obvious error that he misstated the guideline, but that is no different from any other case where there is a guideline error. It is no different from any other case where the court misstates the guideline, but this court has nonetheless found that the error is harmless. And here we're not even in harmless error territory. Let me ask you about, before your time, let me ask you about the plea agreement. The plea agreement says that you reserve the right, the government reserved the right, to argue for a term at the higher end of the applicable guidelines range, that's paragraph 9. This, by the way, is a form your office has used in other cases, is it not? We've seen this before. Not necessarily in all cases does the language remain the same. Right. For example. It says the applicable guideline range, and it doesn't in paragraph 9 tell us what the applicable guideline range is. Section 9 states that the government should base its sentence on the applicable guideline range, but it does not state what that applicable guideline range is. Exactly. However, paragraph 7 is then entitled applicability of the United States sentencing guidelines, and it says that the parties will submit the following advisory guideline calculations and then lay them out. Why isn't it inexorable to read paragraph 7 as setting forth the applicable guideline range to which paragraph 9 makes reference, and if you don't do that, what purpose does paragraph 7 serve in this agreement? Well, the purpose of the paragraph is to state in the plea agreement, basically for transparency purposes, what the parties thought at that time that the guidelines would turn out to. But that is not, it was a preliminary calculation. The fact that, as your Honor mentioned earlier, the fact that the counsel who negotiated this agreement did not object confirms that the prosecutor reasonably interpreted. Well, let me pause you on that. So are you telling me that the prosecutor thought that for a Category 1 history, the applicable guideline range had a ceiling of 30 months? No, it's 30 to 37 because it was the applicable guideline range at sentencing. But wait, I'm going back to your chart. Are you telling us that if we look in the right-hand category of that chart, we would find a real range for each of those criminal history categories? My argument... As opposed to a negotiated range? That the ranges stated in the plea agreement were not binding on the court, nor were they binding on the United States in terms of the recommendation. So what purpose did they serve? I mentioned that the section is there in order to, for transparency purposes, to show what the parties... It's not for what purpose would they serve. It shows what the parties thought the guidelines preliminarily would turn out to. I concede that the agreement is not a model of draftsmanship. But let me stay with your point. It seems to me that, in fact, the parties didn't know what the criminal history category information was going to be. And so they dealt with that contingency by setting forth a series of six different possibilities and specified the guideline range for each one. But what you want to tell us is that the parties also didn't know what the guideline range was going to be, and the right-hand column sets forth, for some unknown purpose, what they thought they were going to be, but were of no binding effect on either party. Well, at least not on the government, because... And the defendant cited Almonte-Nunez, but Almonte-Nunez has very different language. If you go to the no further adjustments section of Almonte-Nunez's plea agreement, you'll see that the parties expressly agreed, and the court in Almonte-Nunez noted this, that no party would argue for an offense-level adjustment. And it stated that that obligation, that limitation, was binding on the parties. Let me ask you this question. If I take the right-hand column, which specifies the months, and I simply cross it out entirely, eliminate it from the agreement, how, under your analysis of the agreement, has the agreement changed at all, in terms of what guideline ceiling the government may argue for? It seems to me it hasn't changed at all, if we cross that out entirely. Your Honor, if you cross it out, I don't think it has any impact. So it's entirely surplusage under your analysis. Well, it is not surplusage, because it advises the defendant at that time. It's for transparency purposes. And the agreement we submit was ambiguous to that effect, in terms of what the applicable guideline range is. And actually, there is case law in the context of waivers of appeal, where the similar language, where the government's waiver is effective, where the guideline range is X, that the court has interpreted differently. But there, and Almonte-Nunez is an example, because in Almonte-Nunez, the issue was a waiver of appeal. There, if there is any ambiguity in terms of what that guideline range is, whether it's the one in the agreement, or in sentencing, it is interpreted against the government. Your Honor, here it's the opposite. We're on plenary review. Any ambiguity would be interpreted against the defendant. Yes, Your Honor. Counsel, I have not had a chance to check this myself. Perhaps you can enlighten me. Is the change of plea colloquy part of the record in this case, in this appeal? Yes, Your Honor. And in the change of plea colloquy, I would assume that Judge Fuste told the defendant before he pleaded that any guidelines calculations set out in the plea agreement were to be regarded as preliminary or tentative, and that he would determine the applicable guideline range, and that the defendant wouldn't be able to withdraw his plea, even if those ranges were different than the ranges set out in the plea agreement. You're correct, Your Honor. And that is another factor that suggests that the prosecutor's interpretation of the plea agreement at the sentencing hearing was reasonable. Yes. See, I assume that this grid is really meant to give some level of comfort to the defendant and some guidance to the district court as to what the parties anticipate that the guideline range might be. And the plea agreement could be written to say that if the guideline range turns out to be higher, the defendant can have an election to withdraw his plea. There was no such language here. But I do think this brings out a persistent problem that we've had. Plea agreements coming out of your office in the District of Puerto Rico have been very poorly drafted, and we have had problems with them time and again. We don't have that problem with plea agreements coming out of other U.S. attorneys' offices in Massachusetts, Maine, Rhode Island, et cetera. All right? And if you could do us one favor, it would be to bring back to the United States attorney the message that more care should be taken with the drafting of plea agreements, and that the U.S. attorney doesn't have to go much further than to ask her colleagues in the other districts in the circuit for the forms that they're using, because this is a problem we have that is virtually unique to Puerto Rico. I'll make sure that the U.S. attorney does hear your honors concerns. I would like to at least briefly address their argument that this case was not well out of the heartland of cases. I want to cite the record at the change of plea. Actually, this was at the sentencing hearing where the court stated that this is not a regular gun case. It went forward and finally concluded. Your time is gone, but you can keep going because we've asked you a lot of questions. I appreciate that, your honor. The court concluded that this is well outside the heartland of cases, this kind of thing. And to that, defense counsel responded, we understand the court's concern. Significantly, at that point, the court immediately asked, have I said something that is not the correct analysis? And what does defense counsel respond? He says, I understand no, your honor. So on that record, this court has discretion to find waiver. What do you say about, Appellant's counsel, Ms. Thompson, has made a point about the atmosphere in the courtroom at this sentencing. Were you there so you can shed light on it? Your honor, I don't believe that defense counsel was afraid of Judge Fuste. And if that's what they're insinuating, and if that were so, I guess they could file a 2255 alleging ineffective assistance of counsel. But that would be another issue. That would not be relevant in this direct appeal. As to the nature of the defense, also states that the court's explanation was insufficient. We disagree wholeheartedly. The court expressly discussed at the sentencing hearing, which included a thorough discussion, the serious nature and circumstance of the offense. This was a crime that included not one, but two firearms. Both of them significantly were illegally modified to fire in fully automatic mode as machine guns. And these weren't firearms that just happened to have this dangerous capability. Marcena himself bought the metal chip and inserted that chip into the gun. Also, the gun was stolen into the Glock pistol. It was a Glock pistol and an AR-15 assault rifle. Thank you, counsel. Abundant ammunition. Thank you, Your Honors.